[Civ. No. 4310.   First Appellate District, Division Two.—September 22, 1922.]

ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY, LTD. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—RANCH EMPLOYEE—KICK BY HORSE —EVIDENCE—INJURY IN COURSE OF EMPLOYMENT.—In this proceeding to review an award of the Industrial Accident Commission for injuries received by a ranch employee from being kicked by a horse, the evidence sufficiently shows that even though the employee had been employed originally to do grading, his employment had been enlarged by the superintendent to cover the breaking of horses, and that he was acting within that branch of his work at the time he was injured.

[2] ID.—STATUS OF EMPLOYEE ON DAY OF INJURY.—In such proceeding it cannot be successfully contended that the employee was not in the employ of his employer on the day of the accident, because he did not work on that day, and under the terms of his employment he was not to be paid wages on days that he did not work, where also by the terms of such employment he was to receive his board and lodging on every day, and watered and cared for the stock upon days when he did not work.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

J. Hampton Hoge for Petitioner.

A. E. Graupner for Respondents.

LANGDON, P. J.—This matter comes before us upon a writ of *certiorari* to review the award of the respondent Industrial Accident Commission, by which respondent James Shannahan was allowed the sum of $107.34 as damages suf-

---

1.   What injuries arise out of and in the course of the employment within the meaning of Workmen's Compensation Act, notes, **Ann. Cas.** 1913C, 1; Ann. Cas. 1914B, 495; Ann. Cas. 1916B, 1290; Ann. Cas. 1918B, 764; **L. R. A.** 1916A, 40; **L. R. A.** 1917D, 114; **L. R. A.** 1918F, 896.

fered by him by reason of an injury sustained, according to the findings of the said commission, in the course of and arising out of his employment with the Cloman Land and Sheep Company, of which company the petitioner was the insurer.

Petitioner asserts that Shannahan was not entitled to compensation or to any of the benefits of the Workmen's Compensation, Insurance and Safety Act, because at the time of his injury he was not employed by Cloman Land and Sheep Company and was not performing services growing out of and incidental to his employment.

On February 8, 1921, Shannahan was employed by the Cloman Land and Sheep Company to work on a ranch owned by said company and situated at Grimes, California. He testified that he was to be paid three dollars a day for his services for six days a week, together with board and lodging for seven days. He testified that when he started his work on the ranch he "broke" three horses; that he was employed generally to do "scraping"; that he watered and fed the horses on the ranch; that he would come in with his own team and water it and then go down and water the extra stock whenever Mr. Adams, the superinten-dent, was not around to do it; that Mr. Adams had not in-structed him to water the other horses, but he watered them as he watered his own team and Mr. Adams was aware of this and did not object thereto; that he worked eight or nine hours a day on the ranch; that he did not have any regular hours, but worked until "things were done"; that he would be engaged in watering the stock sometimes until half-past 7 o'clock. On the evening of the accident, be-tween 6 and 7 o'clock, he took one of the horses out for water. Here is his account of what then occurred:

"I watered him, and to get him gentle, the saddle was on and the bridle and I put my foot on the saddle so the weight on the stirrup would get him gentle. Q. How old was that horse? A. A young horse, maybe six. Q. Had it been broken? A. Yes, we had hooked it up on the wagon a couple of times. Q. What had you to do with the break-ing of that horse? A. Well, we broke it on the wagon. Q. Had you driven it? A. Yes, I was the first one to draw a line on her? Q. Who put the saddle on it? A. I did. Q. Did you ride him over to water? A. No, I walked

her. Q. Why did you put the saddle on? A. To get her used to it. Q. Had you done that before? A. A couple of times and I was on her once. Q. Had you ever put the saddle on before with Mr. Adams' knowledge? A. I don't know, sometimes I did it when he was not there—any time I saw her standing there. Q. I want to know if you were doing anything that was not within your duties or within his knowledge, did he ever object to your watering this horse or putting the saddle on him? A. Never said a word. Q. Had he seen you with this horse before? A. Oh, yes. Q. When you put your foot on the stirrup, what happened? A. She threw back and went up. I had her by the halter and didn't want it to get away. Q. He stood on his hind legs? A. Just reared up and I said, 'Oh, Larry! Oh, Larry!' and he said 'All right, Jim.' Q. Who is Larry? A. Mr. Adams. Q. Where was he? A. Fixing the caterpillar. Q. Was he in sight? A. No, he was behind the fence, and he came and the milker heard it and he ran out, and that is the time I was tromped. Q. What happened? A. I got kicked and tore in here. . . . ''

Petitioner argues that as Shannahan was employed to do grading on the ranch, his duties did not include any work with the horse which injured him; that while he did assist the superintendent on two occasions, in driving this horse in a wagon, this was done merely as an accommodation to the superintendent. It is urged, as a material fact, that had Shannahan not watered the unbroken horse or assisted in training him, this work would have been done by the superintendent or by someone else on the ranch and Shannahan would not have been discharged because of neglect of duty. That may be true, but the trend of the argument is that a man working on a ranch must confine himself strictly to the minimum amount of work expected of him in order to keep his job, and must have his duties very definitely defined, otherwise he will lose his right to compensation for injuries sustained while serving his employer's interests with the knowledge, consent, and encouragement of the employer. In the present case Adams was the superintendent on the ranch with authority to direct the men about their work. He stated that Shannahan was employed to drive a Fresno. He was asked: ''In addition to that what did he have to do or what did he do in regard to the

horses? A. He assisted me in breaking three colts, that is, we broke the colts together. . . . I told him before he came down we would have to break the horses for the Fresno. . . . Q. You knew he was a man experienced in handling horses? A. Yes, I heard he was. Q. You did use him, then, in helping do that work? A. Yes. Q. You found him a capable man with horses? A. Yes.''

[1] We think a recital of the above testimony is a sufficient answer to petitioner's contention, and that it clearly shows that even though Shannahan had been employed originally to do grading, his employment had been enlarged by the superintendent to cover the breaking of horses on the ranch, and that he was acting within that branch of his work at the time he was injured.

[2] Another objection is made to the award, based upon the fact that on the day of the accident, July 15, 1921, Shannahan's team of horses being tired, it was thought best to rest it, and, accordingly, he ''laid off'' for the day. On Sundays and other days upon which he did not work he did not receive his wages of three dollars a day, but he did receive his board and lodging and he always watered and cared for his team and for the other horses on the ranch, when necessary, upon Sundays and holidays and days when he was ''laid off.'' It is contended that because he was not to receive wages for the day on which he was injured, he was not in the employ of the Cloman Land and Sheep Company on that day. We think the point is without merit. He cared for the horses and received his board and lodging on that day, which, assuredly, was a part of his compensation for his labor. The situation here is different than would be the situation of a factory worker on a holiday. Here the place of employment was open and accessible to the employee on this day when he was not actually working at the grading; he was at least encouraged, if not expected, to care for his teams and the other stock around the ranch; he was given some compensation for such labor, i. e., his board and lodging; and while engaged in this work he was injured. This work grew directly out of his employment, and would never have been performed by him but for his employment on the ranch.

We think Shannahan was in the employ of Cloman Land and Sheep Company at the time of his injury; that said

injury occurred in the course of his employment and was proximately caused thereby—all within the meaning of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831); that the findings of the Industrial Accident Commission are sustained by the evidence.

The award is affirmed.

Nourse, J., and Sturtevant, J., concurred.